IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DAVID SCOTT McMILLAN,      :
                           :
        Plaintiff,         :
                           :
    v.                     :   Civil Action No. 03-0006 JJF
                           :
WEEKS MARINE, INC.         :
                           :
        Defendant.         :

Rudolph V. DeGeorge, II, Esquire, of BARISH ROSENTHAL, Philadelphia, Pennsylvania.
Leo John Ramunno, Esquire of LEO JOHN RAMUNNO, ESQUIRE, Wilmington, Delaware

Attorneys for Plaintiff.

Mary Elisa Reeves, Esquire, of DONNA ADELSBERGER & ASSOCIATES, P.C., Glendside, Pennsylvania.
Carmella P. Keener, Esquire, of ROSENTHAL, MONHAIT & GODDESS, Wilmington, Delaware.

Attorneys for Defendant.

**MEMORANDUM OPINION**

March 22, 2007
Wilmington, Delaware

Farnan, District Judge.

  Pending before the Court are three Motions filed by Defendant Weeks Marine, Inc., a Motion For Judgment As A Matter Of Law Under Fed. R. Civ. P. 50 (D.I. 77), a Motion To Vacate The Award Of Past And Future Lost Earnings And For A New Trial On Damages (D.I. 86), and a Motion For Stay Of Execution Of Judgment Pending Disposition Of Post Trial Motions (D.I. 88).  For the reasons discussed, the Court will deny Defendant's Motion For Judgment As A Matter Of Law (D.I. 77), grant Defendant's Motion To Vacate The Award Of Past And Future Lost Earnings And For a New Trial On Damages (D.I. 86), and deny as moot Defendant's Motion For Stay Of Execution Of Judgment Pending Disposition Of Post Trial Motions (D.I. 88).

## I. BACKGROUND

  On January 3, 2002, Plaintiff, David McMillan, filed this lawsuit against Defendant in the Eastern District of Pennsylvania alleging that Defendant, through its negligence and unseaworthy vessels, subjected him to unsafe working conditions from which he sustained injuries. (D.I. 1).  Plaintiff alleged that he had been working on an overly muddy scow and was not given a chance to wash the mud off his boots before transferring to another boat. As a result, he alleges, he slipped and fell off the boat, sustaining facial and shoulder injuries.  The Pennsylvania court transferred the case to this Court on January 3, 2003. (D.I. 11).

2

From April 26 to May 1, 2006, the Court held a jury trial on the issues of whether Defendant was negligent under the Jones Act, 46 U.S.C. App. § 688, and whether Defendant's vessels were unseaworthy. At the close of all of the evidence, Defendant moved the Court for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). (D.I. 77). The Court deferred judgment on the Motion and allowed the case to proceed to the jury. On Plaintiff's unseaworthiness claim, the jury returned a verdict in favor of Defendant. On Plaintiff's negligence claim, the jury returned a verdict finding that Defendant was negligent, and awarding Plaintiff damages in the amount of $620,546. However, the jury also found that Plaintiff acted negligently and that thirty-nine percent of Plaintiff's negligence contributed to his own injury. (D.I. 79). Accordingly, the total damages awarded to Plaintiff were reduced by 39 percent, resulting in final damages of $378,533.06. Judgment was entered on May 11, 2006. By the instant Motions, Defendant renews its request for judgment as a matter of law, and alternatively, requests the Court to vacate the jury's award for past and future lost earnings and order a new trial on those damages.

## II. LEGAL STANDARD

### A. Motion For Judgment As A Matter Of Law

A court may grant judgment as a matter of law when "there is no legally sufficient evidentiary basis for a reasonable jury to

find for that party on that issue." Fed. R. Civ. P. 50(a). In assessing the sufficiency of the evidence, a court must review all of the evidence in the record, viewing it in the light most favorable to the non-moving party and giving the non-moving party the benefit of all fair and reasonable inferences that could be drawn from it. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000). The court may not weigh the evidence, make credibility determinations, or substitute its version of the facts for the jury's version. Id. Motions for judgment as a matter of law are granted "sparingly" and only in those circumstances in which "the record is critically deficient of the minimum quantum of evidence in support of the verdict." Johnson v. Campbell, 332 F.3d 199, 304 (3d Cir. 2003). The question the Court must answer then, is "whether, viewing the evidence in the light most favorable to the verdict, a reasonable jury could have found for the prevailing party." Id.

    B.  Motion For a New Trial

A court may grant a new trial "to all or any of the parties and on all or part of the issues. . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . ." Fed. R. Civ. P. 59(a). A court should grant a new trial where the verdict is contrary to the weight of the evidence and a miscarriage of justice would

4

result if the verdict were to stand. Brennan v. Norton, 350 F.3d 399, 430 (3d Cir. 2003)(citing Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1352 (3d Cir. 1991)).  However, where the ground for a new trial is that the jury's verdict was against the weight of the evidence, the court should proceed cautiously, because such a ruling would necessarily substitute the court's judgment for that of the jury. Klein v. Hollings, 992 F.2d 1285, 1290 (3d Cir. 1993).  A motion for a new trial is also appropriately granted where a substantial error occurred in the admission or rejection of evidence. Goodman v. Pennsylvania Turnpike Comm'n, 293 F.3d 655, 676 (3d Cir. 2002).

In determining whether to grant a motion for a new trial under Rule 59(a), the court need not view the evidence in the light most favorable to the verdict winner, a distinction from similar motions under Rule 50. Whelan v. Teledyne Metalworking Prods., 2006 U.S. Dist. LEXIS 1908 at *20 (W.D. Pa. Jan. 6, 2006)(citing Bullen v. Chafinch, 336 F. Supp. 2d 342, 347 (D. Del. 2004)).  However, a new trial should only be granted where "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or where the verdict shocks the conscience. Williamson v. Conrail, 926 F.2d 1344, 1352 (3d Cir. 1991); see also Price v. Delaware Dep't of Correction, 40 F. Supp. 2d 544, 550 (D. Del. 1999).  The moving party has the burden of proving that a new trial is warranted.

Whelan, 2006 U.S. Dist. LEXIS 1908 at *20.

## III. DISCUSSION

### A. Whether Defendant Is Entitled To Judgment As A Matter Of Law On Plaintiff's Claim Under The Jones Act

By its Motion, Defendant contends that the evidence Plaintiff presented at trial does not, as a matter of law, establish that Defendant was negligent. (D.I. 77). Defendant also contends that Plaintiff failed to establish causation under the Jones Act, 46 U.S.C. App. § 688. According to Defendant the evidence offered at trial clearly demonstrates that Plaintiff's accident was caused exclusively by his own negligence, because he knew his boots were muddy yet failed to clean or change them. In response, Plaintiff contends that the jury's verdict was supported by the evidence.

The Jones Act provides that "any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury." 46 U.S.C. App. § 688(a); see Neely v. Club Med Mgmt. Servs., 63 F.3d 166, 194 (3d Cir. 1995). Though a plaintiff alleging claims under the Jones Act must prove the traditional elements of negligence (duty, breach, notice, causation and damages), the standard of proof for causation is "featherweight." Evans v. United Arab Shipping Co. S.A.G., 4 F.3d 207, 210 (3d Cir. 1993). Under this "featherweight" standard of proof, causation is satisfied "if the proofs justify with reason

the conclusion that employer negligence played any part, even the slightest, in producing the injury." Wilburn v. Maritrans GP, Inc., 139 F. 3d 350, 357 (3rd cir. 1998). In a Jones Act case, issues of negligence are questions for the jury to resolve. Southard v. Indep. Towing Co., 453 F.2d 1115, 1118 (3d Cir. 1971) (the jury "plays a preeminent role" in Jones Act cases).

Viewing all of the evidence in the light most favorable to Plaintiff, as must be done for Rule 50 motions, the Court concludes that sufficient evidence supports the jury's verdict finding Defendant negligent. Plaintiff testified as to the condition of the scow, the operational urgency of moving scow men at the end of the job, and his knowledge of gangplanks being used by others in the industry for transferring dredge workers between tugs. (D.I. 94). He also testified that the amount of mud on the scow on the day of the accident was "uncommon to any of the other times[,]" with the walking surface of the scow covered with four to six inches of mud in lower areas and up to two feet of mud in other areas. (D.I. 94 at 31, 37, 40). Plaintiff testified that the dredge operator customarily rinsed the mud off the scow to create a safe work area, but on the day of the accident the mud had not been rinsed off. (D.I. 94 at 32-34). Plaintiff further testified that he complained about the scow's muddy condition to Captain Wise immediately before the accident (D.I. 94 at 35).

Plaintiff then testified that, while Plaintiff was still on the scow, Captain Wise called to him, telling him to "hurry up" and get onto a tug boat, the Shelby, for transfer to another boat, the Virginia, that would be taking the crew home. (D.I. 94 at 35, D.I. 97 at 9). Plaintiff further testified that his belongings were already packed and were handed to him when he arrived on the Shelby, so he would be able to get to the Virginia more quickly, adding to his perception of urgency. (D.I. 94 at 43). Plaintiff next testified that while on the Shelby, he tried to wipe the mud off his boots as best as he could, but that he felt there was no time for him to take off his boots or to put on his street shoes. (D.I. 94 at 43). Because Defendant did not equip its boat with gangplanks, Plaintiff testified, he transferred between the Shelby and the Virginia by stepping from a bulwark on the Shelby to another on the Virginia in one long step, without a handrail, from a height of two feet above the deck. (Id. at 45). Plaintiff testified that it was during that long step that he fell.

The Court finds Plaintiff's testimony, along with the other record evidence is sufficient to establish the elements of a negligence claim, including the slight causation requirement of the Jones Act. Thus, the Court concludes that Plaintiff's evidence was sufficient to support the jury's verdict finding Defendant partially negligent. Accordingly, the Court will deny

Defendant's Motion For Judgment As A Matter Of Law (D.I. 77) on Defendant's negligence claims.

    B.    <u>Whether Defendant Is Entitled To Have The Jury's Damages Award Vacated And A New Trial</u>

In the event the Court concludes the that the jury verdict should stand, Defendant contends in the alternative, that the jury's damages award of past lost earnings ($100,000) and future lost earnings ($377,000) should be vacated and a new trial ordered on those damages. Specifically Defendant challenges the Court's decision to admit the testimony and expert reports of Plaintiff's economist, Royal A. Bunin ("Mr. Bunin"), on the amount of Plaintiff's lost earnings. Defendant contends that Mr. Bunin's testimony was improper because: (1) Mr. Bunin based his entire wage calculation on speculation, hearsay and insufficient evidence; (2) Defendants were not provided with an expert report wherein Mr. Bunin employed an alternative wage calculation until the night before trial; and (3) Mr. Bunin's testimony was outside the scope of his expert report, as well as his expertise as an economist.[1]

---

[1] Defendant offers several other contentions for why a new trial on damages should be granted. Specifically, Defendant contends that Defendant should have been permitted to rebut the testimony of Plaintiff's medical experts with its own experts. Defendant also contends that the Court erred in allowing Plaintiff to testify about hearsay conversations related to job security and seniority in the Union, in allowing Mr. Bunin's second expert report even though it was submitted after 6:00 p.m. the night before trial, and in refusing to provide certain jury instructions. (D.I. 86). Because the Court concludes that a new

In response, Plaintiff contends that the Court did not abuse its discretion in admitting Mr. Bunin's testimony because (1) Mr. Bunin was qualified to testify as to Plaintiff's post-injury earning capacity, and (2) Mr. Bunin's last minute report, insofar as it actually reduced Plaintiff's lost wages, was not prejudicial. Thus, Plaintiff contends that the jury's damages award was supported by competent evidence, and, therefore, a new trial is not warranted.

1. Whether Mr. Bunin's Testimony Lacked A Proper Foundation

Defendant contends that Mr. Bunin's testimony lacked the proper foundation for admission into evidence because Mr. Bunin (1) calculated Plaintiff's lost earnings projection by relying on a very limited period of time that immediately preceded and immediately followed Plaintiff's injury and (2) used his "knowledge" of how seniority in a union ensures steady work to speculate that, had Plaintiff not been injured, he would have achieved and maintained full-time employment in the dredging industry. (D.I. 87 at 9-10).

The trial court has broad discretion to admit or exclude evidence under the Federal Rules of Evidence. Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 97 (3d Cir. 1983); see Weinstein's Federal Evidence § 702.02. However, expert testimony cannot be

---

trial is warranted for the reasons discussed in this Memorandum Opinion, it declines to address these additional issues.

submitted to the jury unless it is accompanied by a sufficient factual foundation. <u>Benjamin v. Peter's Farm Condo. Owners Ass'n</u>, 820 F.2d 640, 642 (3d Cir. 1987). Although mathematical exactness is not required, testimony of post-injury earning capacity must be based upon the proper factual foundation. <u>Id</u>. At 643; <u>Fed. R. Evid.</u> 702. Moreover, an expert's testimony should be excluded as speculative if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects, including his wage rate and ability to maintain full-time work in seasonal or other part-time industries. <u>Boucher v. U.S. Suzuki Motor Corp.</u>, 73 F.3d 18, 21-22 (2d Cir. 1996); <u>see also</u> <u>Gumbs</u>, 718 F.2d at 98. In the present case, Mr. Bunin's projections of Plaintiff's lost earnings were based on his assumption that Plaintiff would work for the rest of his work-life on a full-time basis at an artificially determined wage. The Court concludes that the evidence does not establish any foundation for Mr. Bunin's future wage projections.

Mr. Bunin is an actuarial-economic expert who was called to "project the values of future life time earnings of individuals allowing for future growth[.]" (D.I. 95 at 5). Mr. Bunin testified that the purpose of this calculation is "to determine how much money a person has lost due to a death or disability." <u>Id</u>. He also testified that, when preparing actuarial-economic reports, he "like[s] to get tax returns or some type of

employment history on the individual, information about their date of birth [and] the injury and what happened," as well as "the residual capacity that would come from a medical report, a vocational report, and those sort of things." (D.I. 95 at 8). When the wage information is not for a complete year, Mr. Bunin prorates the wage information he has, meaning he calculates annual earnings by assuming a client's partial wage information will be constant throughout the year.

Mr. Bunin prepared two actuarial-economic expert reports for this litigation. For his first report ("Basis 1"), Mr. Bunin calculated Plaintiff's lost earnings capacity by "prorat[ing] on an annualized basis" the $9,420 that Plaintiff earned during "the last position he held prior to the injury," i.e. his seven-week seasonal position with Defendant. (Id. at 9, 29). Mr. Bunin testified that he did not factor Plaintiff's prior or subsequent employment history in the dredging industry into his "Basis 1" calculation. (D.I. 95 at 30-32). In making his "Basis 1" calculation, Mr. Bunin assumed that Plaintiff's injury was the reason why his employment ended with Defendant. This assumption was based solely on the opinion of Plaintiff's orthopedic surgeon that Plaintiff could not return to work as a scowman or deckhand. (D.I. 95 at 12, 27).[2]

---

[2] Mr. Bunin testified that he did not consider the opinions of Plaintiff's treating physician or surgeon, both of whom did believe that Plaintiff could return to work, because "it would be

Mr. Bunin prepared a second report ("Basis 2") after learning that "the reason [Plaintiff] stopped working [for Defendant] on June 7th was that was the last day of work, . . . he didn't stop working because he was injured on the job" and that Plaintiff actually did return to work as a deckhand after the surgery. For his "Basis 2" calculation, Mr. Bunin also considered Plaintiff's wages during his two month employment at another dredging employer, C.J. Langenfelder, after Plaintiff's accident, as well as the downtime between Plaintiff's job with Defendant and his job with C.J. Langenfelder. When these additional factors were considered, Plaintiff's projected pro-rated lost earnings capacity fell from the $79,722 projected under "Basis 1" to $50,430. (D.I. 95 at 13, D.I. 87 Ex. A). However, Mr. Bunin still did not consider Plaintiff's prior work in the dredging industry or subsequent work outside of the dredging industry. "Basis 2" also did not anticipate periods of unemployment in the dredging industry.

The Court concludes that Mr. Bunin's expert reports and subsequent testimony about Plaintiff's lost wages lack a proper foundation because he failed to consider Plaintiff's complete work history and the seasonal nature of Plaintiff's dredging industry positions prior to the injury. The projected earnings estimates in both "Basis 1" and "Basis 2" are significantly

---

beyond my [Mr. Bunin's] expertise to give a medical opinion." Id.

13

higher than Plaintiff's 2005 W-2 earnings of $34,680, and both exceed any recorded annual earnings in Plaintiff's work history. (D.I. 87 Ex. A). Additionally, neither "Basis 1" nor "Basis 2" were adjusted downward for any periods between jobs when Plaintiff would not have been paid, even though Mr. Bunin acknowledged under cross examination that "these jobs are called on for a period of time, . . . then the job is over."[3] (D.I. 95 at 10, 39).

In sum, the evidence at trial demonstrates that dredging jobs are seasonal and would not have been available to Plaintiff on a regular, full time basis. Indeed, during the year and a half that Plaintiff worked in the dredging industry, he experienced downtime or gaps in his employment and worked for multiple employers. (D.I. 94 at 15-21; D.I. 95 at 31, 35). Further, both Plaintiff's job with Defendant and his subsequent work with C.J. Langenfelder were seasonal jobs. (D.I. 94 at 39, D.I. 97 at 31-32). Yet, Mr. Bunin failed to consider this important evidence in his wage earning calculation. Thus, the Court concludes that Mr. Bunin's expert reports and testimony were not based on realistic wage estimates, and were instead based on the faulty and unsupported assumption that Plaintiff

---

[3] "Basis 2" did include the period between Plaintiff's job with Defendant and his job with C.J. Langenfelder when Plaintiff was not paid. However, the calculation assumed that this brief period was the only time Plaintiff would be without work for the entire year.

14

would be able to maintain full-time work in a seasonal and part-time industry.  Accordingly, the Court concludes that Mr. Bunin's expert reports should have been excluded from evidence because they lacked a proper foundation.

        2.    <u>Whether Mr. Bunin's Testimony Exceeded The Scope Of His Expert Report</u>

Defendant also contends that Mr. Bunin exceeded the scope of his expert report when he testified about the role of union membership in securing full time work for its members. (D.I. 87 at 5).  Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), an expert's report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; [and] the data or other information considered by the witness in forming the opinions." <u>Fed. R. Civ. P.</u> 26(a)(2)(B).  The purpose of this disclosure rule is to give opposing parties a reasonable opportunity to prepare for effective cross examination or to secure their own expert witness.  Advisory Committee Notes to 1993 Amendments to <u>Fed. R. Civ. P.</u> 26(a)(2)(B).

When an expert's testimony goes beyond the parameters of that expert's report, the Court's procedure is to consider objections at the conclusion of trial because of the difficulty of resolving such disputes during trial.  If the verdict is adverse to the objecting party, the Court then undertakes consideration of whether or not the expert testified outside the parameters of the Rule 26 report.  For a party to prevail on this

argument, it must demonstrate that the expert's testimony exceeded the scope of the Rule 26 report, and that the objecting party suffered undue prejudice because of the violation. If the Court finds that the opinions offered at trial were not disclosed, the Court then considers whether a new trial is warranted and what sanctions, if any, should be imposed.

During trial, Mr. Bunin, an actuarial economist expert witness, was permitted to testify, over Defendant's objection, about the employment frequencies, hours worked, and employment experiences of workers in the dredging industry. He testified that "while earlier on in a person's career there may be fluctuation as they're getting known in the industry picking up work, but once they're known in the industry, they get picked up and their work seems to be more solid year around." (D.I. 95 at 11). He also testified that this opinion derived from other reports he had prepared for other workers in the dredging industry who were members of the Union of Operating Engineers Local 25. Id. After reviewing Mr. Bunin's expert reports, the Court finds that these opinions were not disclosed as required, nor did Mr. Bunin provide any bases to support them. Moreover, the Court concludes that Mr. Bunin's testimony on Plaintiff's future prospects of employment in the dredging industry reflects vocational experience outside the scope of his expert report, discipline and prior experience as an actuarial-economist.

3.  Summary

In sum, the Court concludes that Mr. Bunin's testimony was both unsupported and beyond the scope of his expert reports. Because the Court finds that Mr. Bunin's testimony was integral to the jury's verdict on lost wages,[4] the Court concludes that Defendant suffered undue prejudice warranting a new trial on damages. Accordingly, the Court will grant Defendant's Motion to vacate the damages award for past lost earnings ($100,000) and future lost earnings ($377,000), and schedule a new trial on these damages.

## IV. CONCLUSION

For the reasons discussed, Defendant's Motion For Judgment As A Matter Of Law Under Fed. R. Civ. P. 50 (D.I. 77) will be denied, Defendant's Motion To Vacate The Award Of Past And Future Lost Earnings And For a New Trial On Damages (D.I. 86) will be granted, and Defendant's Motion For Stay Of Execution Of Judgment Pending Disposition Of Post Trial Motions (D.I. 88) will be denied as moot.

An appropriate Order will be entered.

---

[4] The jury's verdict on past and future lost wages was approximately 80% of Mr. Bunin's Basis 2 calculations. D.I. 87, n. 1.